UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | : | |
| 450 Fifth Street, N.W. | : | |
| Washington, D.C.  20549 | : | |
| | : | Civil Action No. |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| JOHN GORMAN | : | |
| 11 Jeffrey Lane | : | |
| East Windsor, New Jersey 08520 | : | |
| PATRICK GENTILE, | : | |
| 14 Red Rose Circle | : | |
| Darien, Connecticut 06820 | : | |
| Defendants. | : | |

## COMPLAINT FOR CIVIL PENALTY

Plaintiff, United States Securities and Exchange Commission ("Commission"), for its

Complaint alleges as follows:

## SUMMARY

1.     This proceeding involves violations of the federal securities laws arising from

improper revenue recognition at American Banknote Corporation ("ABN"), and its then wholly-

owned subsidiary American Banknote Holographics, Inc. ("ABNH").

2.     Gorman and Gentile, former and current senior officers, respectively, of ABN,

overstated ABN's fiscal year 1996 revenue and net income by causing ABNH improperly to

record revenue on two "bill and hold" transactions.  Gorman and Gentile knew, or should have

known, that ABN reported this overstated revenue and income on the financial statements that

were included in the company's Annual Report on Form 10-K for its fiscal years ended December 31, 1996, and December 31, 1997. Gorman and Gentile supervised the preparation of, reviewed, and approved these filings, and Gorman signed them.

3.      On or about July 15, 1998, ABNH became a public company through an initial public offering ("IPO"). ABNH raised approximately $107 million (pricing its shares at $8 ½ per share) through a Registration Statement on Form S-1 filed with the Commission in which the company registered 13,636,000 shares of its common stock for sale to the public. ABN, which received the proceeds of the offering, used most of the proceeds to reduce its debt. Gorman and Gentile participated in the preparation and review of ABNH's registration statement, and each of them knew that the registration statement filed with the Commission, or relied upon in determining the price at which ABNH shares would be offered and purchased, included financial statements for ABNH for fiscal years ended December 31, 1996 and December 31, 1997. As a result, Gorman and Gentile knew, or should have known, that the Registration Statement on Form S-1 that ABNH filed in connection with its IPO contained materially false and misleading financial information for fiscal year 1996 because the financial statements included improperly recognized revenue and net income resulting from two "bill and hold" transactions.

4.      In January 1999, ABNH announced that it would restate its results for each of the first three quarters of fiscal year 1998, and that its annual financial statements as of December 31, 1996, and December 31, 1997, should no longer be relied upon. The prices of the securities of both ABNH and ABN dropped substantially as a result of these announcements.

5.      ABNH's restated financial numbers for fiscal year 1996, reported in December 1999, resulted in a material decrease in ABNH's quarterly and annual revenue and net income, which also resulted in material changes to ABN's operating results for that year. As a result of

2

the conduct described above, ABNH improperly recognized approximately $635,250 of revenue,

resulting in approximately a $254,290, or 5.86%, overstatement of ABNH's net income, and a

6.61% overstatement of ABN's net income, and ABN's and ABNH's public investors were

mislead into believing that ABN's net income, and ABNH's revenue and net income, for fiscal

year 1996 were materially better than they were.

6.      By engaging in the conduct described above, Gorman and Gentile violated

Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q

(a)(2) and (a)(3)].

## JURISDICTION AND VENUE

7.      The Commission brings this action pursuant to the authority conferred upon it by

Section 20(d)(1) of the Securities Act [15 U.S.C. § 77t(d)(1)] to obtain a civil money penalty

from defendants Gorman and Gentile.

8.      This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the

Securities Act [15 U.S.C. §§ 77t and 77v].  Venue lies in this Court pursuant to Section 22 of the

Securities Act [15 U.S.C. § 77v].

9.      Defendants, directly and indirectly, have made use of the means or instruments of

transportation or communication in interstate commerce, or of the mails in connection with the

acts, practices and transactions alleged herein, certain of which occurred within the District of

Columbia.

## THE DEFENDANTS

10.     John Gorman, age 59, is a resident of East Windsor, New Jersey.  He retired from

ABN in August 1999.  He served as Executive Vice President and Chief Financial Officer

("CFO") of ABN until mid-1998, at which point he became the general manager of American

Bank Note Company, a wholly-owned subsidiary of ABN.  During relevant times in 1998,

Gorman also held a position as Executive Vice President of ABNH.  At all times relevant to the

Complaint, Gorman was a Certified Public Accountant ("CPA"), whose license from the state of

Pennsylvania expired in 1986.

11.     Patrick Gentile, age 45, is a resident of Darien, Connecticut.  Gentile served as

the Corporate Controller of ABN from 1990 to July 1998, and from 1995 to July 1998, also

served as a Vice President of ABN.  From July 1998 to October 2001, Gentile served as ABN's

Chief Accounting Officer and Senior Vice President.  From October 2001 to the present, Gentile

has been an Executive Vice President and the CFO of ABN.  During relevant times in 1998,

Gentile also held a position as Senior Vice President.– Finance for ABNH.  At all times relevant

to the Complaint, Gentile was a CPA, licensed by the state of New York.

## RELEVANT ENTITIES

12.     ABN is a holding company incorporated in Delaware with its principal executive offices

located in Englewood Cliffs, New Jersey.  During the relevant time period, ABN, through its

subsidiaries, provided, among other things, stored-value telephone cards and magnetic-strip

transaction cards, printed business forms, checks, and counterfeit-resistant documents of value

such as money orders, passports, foreign currency, and stock and bond certificates.  During the

relevant time period, ABN's stock was registered with the Commission pursuant to Section 12(b)

of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78l(b)] and traded on the

New York Stock Exchange ("NYSE"). ABN filed for Chapter 11 bankruptcy on December 8, 1999, and emerged from bankruptcy on October 1, 2002. ABN's common stock currently trades on the OTC Bulletin Board. On July 31, 2001, a Final Judgment was entered as to ABN pursuant to which ABN consented to an order permanently restraining and enjoining it from violating the antifraud, periodic reporting, record keeping and internal controls provisions of the federal securities laws. The Complaint alleged ABN engaged in fraudulent revenue recognition practices in its fiscal years 1996, 1997 and 1998 by, among other things, improperly recognizing revenue on consignment sales, unusable work in process, product that was not completed by the end of the fiscal year, product that was never shipped and product that was returned.

13.     ABNH is a Delaware corporation with its principal executive offices located in Elmsford, New York. ABNH is engaged in the origination, production, and marketing of mass-produced secure holograms. Until July 1998, ABNH was a wholly-owned subsidiary of ABN. On or about July 15, 1998, ABNH became a public company and, thereafter, ABNH's common stock was registered pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)] and traded on the NYSE. In August 1999, ABNH's stock was suspended from trading. ABNH's common stock started to trade again on the OTC Bulletin Board, where it currently trades, in March 2000. On July 18, 2001, the Commission instituted and simultaneously settled an administrative proceeding against ABNH pursuant to which ABNH consented to an order requiring it to cease and desist from, among other things, committing or causing any violations, and any future violations, of the antifraud, periodic reporting, record keeping and internal control provisions of the federal securities laws based upon the fraudulent revenue recognition practices mentioned above.

## FACTS

### Gorman and Gentile Cause ABNH To
### Improperly Recognize Revenue on Two "Bill and Hold" Sales

14.    Paragraphs 1 through 13 above are re-alleged and incorporated herein by reference.

15.    During the time that ABNH was a wholly-owned subsidiary of ABN, ABNH's operations contributed materially to ABN's net income.

16.    Under Generally Accepted Accounting Principles ("GAAP"), revenue from products is typically not recognized until the seller has substantially fulfilled the terms of the arrangement, which usually occurs upon delivery of the goods or product or performance of services, unless it is a "bill and hold" transaction or meets some other exception to the general rule.

17.    "Bill and hold" sales, by which a sale is made but the goods are retained by the seller at the customer's request, may be recognized as revenue by the seller before delivery to the buyer if certain stringent conditions set forth in the Commission's Accounting Auditing and Enforcement Release ("AAER") Number 108 are met.  If these conditions are not met, the seller may not recognize the sales as revenue until the goods are shipped to the customer.

18.    In mid to late January 1997, ABNH closed its books and sent preliminary work papers to ABN's independent auditors, Deloitte & Touche LLP ("Deloitte").  Shortly thereafter, Gorman and Gentile learned that ABNH failed to meet its fourth quarter budget and forecasts for revenue.

19.    Gorman and Gentile, with the knowledge and/or participation of other former senior officers of ABN and/or ABNH, then caused ABNH, on or about January 30, 1997,

improperly to record revenue on two "bill and hold" sales for December 1996 to two customers in the total amount of $635,250.

20.     Accruing the revenue for 1996 for the two "bill and hold" transactions was improper because as Gorman and Gentile knew, or should have known, ABNH and the customers had not entered into these sales on or before December 31, 1996. In addition, Gorman and Gentile knew, or should have known, that the two transactions did not meet the conditions set forth for recognizing revenue for "bill and hold" sales under AAER Number 108 and, therefore, did not comply with GAAP. For example, ABNH, not the customers, had requested that the transaction occur on a "bill and hold" basis. Also, the holograms had not been segregated from ABNH's inventory and identified as belonging to the customers as of December 31, 1996.

21.     Gorman and Gentile, as ABN's CFO and Corporate Controller, respectively, supervised the preparation of and reviewed ABN's financial statements, approved all relevant annual reports, and supervised ABN's accounting department. Their responsibilities for the accounting department included establishing and implementing policies and procedures for ABN and its subsidiaries. Gorman and Gentile supervised the preparation of and approved ABN's Annual Report on Form 10-K for its fiscal year ended December 31, 1996, and Gorman signed this filing. This filing was materially false and misleading because it overstated ABN's net income, which included ABNH's net income, for fiscal year 1996.

22.     Gorman and Gentile also supervised the preparation of and approved ABN's Annual Report on Form 10-K for its fiscal year ended December 31, 1997, and Gorman signed this filing. This filing was materially false and misleading because it overstated ABN's net

income, which included ABNH's net income, for fiscal year 1996, which was also reported in this filing.

### Gorman and Gentile Cause ABNH to File a Registration Statement that Contained Materially False and Misleading Financial Information in Connection with ABNH's IPO

23.     On or about July 15, 1998, ABNH became a public company through an IPO that raised approximately $107 million. ABN, which sold all of its shares in the offering, received all of the proceeds of the offering and used most of them to pay down its debt. The ABNH public offering took place pursuant to a Registration Statement ABNH filed on Form S-1 with the Commission, which included financial statements for ABNH for the fiscal years ended December 31, 1996, and December 31, 1997.

24.     Gorman and Gentile participated in the preparation and review of ABNH's registration statement. Gorman and Gentile knew that the registration statement filed with the Commission, and disseminated to investors in conjunction with the offering, included financial statements for ABNH for its fiscal years 1996 and 1997. Gorman and Gentile knew, or should have known, that the Registration Statement on Form S-1 contained materially false and misleading financial information for ABNH's fiscal year 1996 because the financial statements in that filing reported revenue and net income for two improper "bill and hold" transactions.

### FIRST CLAIM

### Gorman and Gentile Violated Sections 17(a)(2) and 17(a)(3) of the Securities Act

25.     Paragraphs 1 through 24 are realleged and incorporated herein by reference.

26.     Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)] provides that it is unlawful in the offer or sale of any security to obtain money or property by means of any untrue

statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)] provides that it is unlawful in the offer or sale of any security to engage in any transaction, practice, or course of business which operates, or would operate as a fraud or deceit upon the purchaser.

27.     During 1998, Gorman and Gentile violated Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (a)(3)] by making statements in the offer or sale of securities which they knew, or should have known, were materially false and misleading. Gorman and Gentile participated in the preparation and review of ABNH's registration statement. Gorman and Gentile knew that the registration statement filed with the Commission, and disseminated to investors in conjunction with the offering, included financial statements for ABNH for its fiscal years 1996 and 1997. Gorman and Gentile knew, or should have known, that the Registration Statement that ABNH filed on Form S-1 in connection with its IPO contained materially false and misleading financial statements for fiscal year 1996 because the financial statements that were contained in that filing reported revenue and net income for the two improper "bill and hold" transactions.

## PRAYER FOR RELIEF

**WHEREFORE,** the Commission respectfully requests that this Court:

### I.

Enter an order requiring defendants Gorman and Gentile to pay a civil money penalty pursuant to Section 20(d)(2)(B) of the Securities Act [15 U.S.C. § 77t(d)(2)(B)];

## II.

Retain jurisdiction of this action in accordance with the principles of equity and the

Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and

decrees that may be entered, or to entertain any suitable application or motion for additional

relief within the jurisdiction of the Court; and

## III.

Grant such other relief as the Court deems just and appropriate.

Respectfully submitted,

Dated: _9/8/04_

_____
James A. Kidney (Trial Counsel) (D.C. Bar
# 252924)
Michael Semler (Trial Counsel) (D.C. Bar #
162479)
Thomas C. Newkirk (D.C. Bar # 225748)
Christopher R. Conte (D.C. Bar # 419774)
Noel Gittens
E. Laurita Finch (D.C. Bar # 464397)
Peggy Ellen (D.C. Bar # 202655)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
450 Fifth Street, N.W.
Washington, D.C.  20549-0707
(202) 942-4797(Kidney)
(202) 942-9581 (fax)